**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**RICKY HARVEY, CHRISTINE ANN
HARVEY,**

                **Plaintiffs,**

**-vs-**                                                        **Case No. 6:07-cv-1641-Orl-DAB**

**LAKE BUENA VISTA RESORT, LLC,**

                **Defendant.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion of Plaintiffs for Summary Judgment and Supporting Memorandum of Legal Authority (Doc. No. 9, filed Nov. 14, 2007);

2. Affidavit and Sworn Declaration of Plaintiff Ricky Harvey in Support of Motion for Summary Judgment (Doc. No. 10, filed Nov. 14, 2007);

3. Memorandum in Opposition of Defendant to Motion of Plaintiffs for Summary Judgment and Supporting Memorandum of Law (Doc. No. 15, filed Nov. 26, 2007);

4. Request for Judicial Notice by Defendant of State Court Decision (Doc. No. 16, filed Nov. 26, 2007);

5. Affidavit of Ofer Fridfertig and Larry S. Cohen in Support of Memorandum in Opposition to Motion for Summary Judgment (Doc. No. 16, filed Nov. 26, 2007).

**Background**

On September 30, 2005, Plaintiffs Ricky and Christine Harvey entered into a contract with Defendant Lake Buena Vista Resort, LLC, to purchase a condominium. (Doc. No. 10 at 2, ¶ 7.) The contract specified that the "completion date" for the unit was on or before September 30, 2007, but Defendant did not deliver the Certificate of Occupancy until October 4, 2007. (Doc. 1-3, filed Oct. 15, 2007, at 12-13; Doc. No. 10 at 13.) Plaintiffs now seek to terminate the agreement, arguing that recission is permitted under both the contract and the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. sections 1701-1720, as amended. (Doc. No. 9 at 1.)

Congress passed the ILSFDA in 1968 as a consumer protection law.[1] The Act requires land developers to issue a detailed "property report" to potential purchasers of newly built homes. 15 U.S.C. § 1707 (2006). The report contains information designed to assist potential buyers in making a fully-informed decision whether to purchase. *Id.* Like many consumer protection acts, however, the ILSFDA exempts certain types of transactions from its requirements. One such transaction is for "the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years." *Id.* § 1702(a)(2). Under the belief that it was exempted by this section, Defendant did not issue a property report to Plaintiffs. (Doc. No. 1-3 at 12; Doc. No. 10 at 11.)

---

[1] *See* Richard J. Link, Annotation, Construction of Provision of 15 U.S.C.A. § 1702(a)(2) exempting from Interstate Land Sales Full Disclosure Act (15 U.S.C.A. § 1701-1720, as amended) Sale or Lease of Land Under Contract Obligating Seller or Lessor to Erect Building Thereon Within Period of Two Years, 118 A.L.R. Fed 647 (1994).

The contract at issue contains several provisions relevant to exemption under section 1702(a)(2). First, paragraph three of the contract is titled "Completion Date" and states: "Without guaranteeing a completion date, it is estimated that substantial completion of the Unit shall be approximately February, 2007, subject to provisions of the Standard Provisions including, but not limited to, Paragraphs 8 and 14 thereof." (Doc. No. 1-3 at 4.)

Paragraph fourteen of the agreement is titled "Completion and Occupancy of the Unit" and provides:

> 14. <u>Completion and Occupancy of the Unit</u>.
> (a) The estimated completion date of the Unit is set forth in Paragraph 3 herein. Buyer acknowledges that the completion date is only an estimate and is subject to and may be extended by Seller. In no event, however, shall such completion date be later than two (2) years from the date Buyer executes this Agreement. The date for completion may be extended by reason of delays incurred by circumstances beyond Seller's control, such as acts of God, war, civil unrest, imposition by a governmental authority of a moratorium upon construction of the Unit or providing of utilities or services which are essential to such construction, casualty losses or material shortages or any other grounds cognizable in Florida contract law as impossibility or frustration of performance, including, without limitation, delays occasioned by wind, rain, lightning and storms. It is the intention of the parties that this sale and purchase shall qualify for the exceptions provided by 15 U.S.C. Section 1702(a)(2), and nothing contained in this Agreement shall be construed or operate, as to any obligations of Seller or Buyer, in a manner which would render the exemption inapplicable.

(*Id.* at 12-13.) Finally, paragraph thirty-four allows the seller "the right to cancel this Agreement and cause Buyer's deposits to be refunded in the event that Seller does not enter into binding contracts to sell at least 90 of the Units in the Condominium." (*Id.* at 20.) Paragraph thirty-four further provides that Defendant's right to cancel the agreement is a "condition subsequent" to the contract. (*Id.*)

Plaintiffs argue that Defendant must be found liable under one of two theories. First, they contend that the contract is insufficient to trigger the exemption of section 1702(a)(2) because the

-3-

terms do not unconditionally obligate Defendant to complete the unit in two years. (Doc. No. 9 at 5-16.) Plaintiffs point to paragraphs three, fourteen, and thirty-four as examples of Defendant's right under the agreement to avoid completing the unit in two years, or at all in some cases. (Doc. No. 9 at 10-17.) As a result, Plaintiffs argue that they are entitled to recission under sections 1703(c)-(e) of the ILSFDA, which allow the purchaser, at his or her option, to revoke the contact and receive a full refund when the seller fails to issue a property report. (*Id.* at 16.)

Plaintiffs contend in the alternative that if the section 1702(a)(2) exemption applies, than Defendant breached its contractual obligation to complete the unit in less than two years. (Doc. No. 9 at 17-18.) According to Plaintiffs, paragraph thirteen of the contract allows them to terminate the agreement in the event of a breach and receive a refund of all sums paid. (*Id.*)

In response, Defendant contends that it made an "unconditional commitment" to complete the construction within two years and is therefore exempt from the ILSFDA. (Doc. No. 15 at 4.) In support, Defendant argues that the "force majeure" clause in paragraph fourteen can coexist with an "unconditional obligation" under section 1702(a)(2). (*Id.* at 9.) In any case, Defendant maintains, the last sentence of paragraph fourteen is a "savings clause" which invalidates all contractual provisions contrary to section 1702(a)(2). (*Id.* at 11.) As to the breach of contract claim, Defendant argues that summary judgment is inappropriate because genuine issues of material fact remain as to: (1) the affirmative defenses raised in the answer, (2) whether performance was excused by the force majeure clause, and (3) whether Defendant was contractually required to deliver a Certificate of Occupancy. (*Id.* at 14-17.)

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); accord *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## Analysis

**I.      Exemption Under Section 1702(a)(2)**

Courts generally look to state law regarding the interpretation of contracts to determine whether a contract can be construed as "obligating the seller [to complete construction] within a period of two years." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 105-06 (3d Cir. 1990); *Fortunato v. Windjammer Homebuilders, Inc.*, No. 8:04-cv-165-T-26MSS, 2006 WL 208777, at *3 (M.D. Fla. Jan. 25, 2006); *Schatz v. Jockey Club Phase III, Ltd.*, 604 F. Supp. 537, 542 (S.D. Fla. 1985). The parties agree that Florida law applies to the contract at issue. Analyzing various types of contracts under the ILSFDA, the Florida courts have determined that only an "unconditional" guarantee of completion within two years will qualify as an obligation within the meaning of section 1702(a)(2). *See Fortunato*, 2006 WL 208777 at *3 (citing *Samara Dev. Corp. v. Marlowe*, 556 So. 2d 1097, 1099-1100 (Fla. 1990)). As to specific contractual terms, the Florida courts have found that an unconditional guarantee does not exist where the contract contains provisions that permit extension of the two year period or limits the purchaser's remedies in the event of the seller's non-performance. *Id.*[2]

The U.S. Department of Housing and Urban Development ("HUD") is the federal agency charged with enforcing various provisions of the ILSFDA. *See*, *e.g.*, 15 U.S.C. § 1707. HUD has

---

[2] While federal courts generally look to state law regarding the interpretation of contracts for purposes of determining whether an exemption to the ILSFDA applies, *see Markowitz*, 906 F.2d at 105, this Court is not bound to follow a state court's interpretation of the ILSFDA's statutory language. *See*, *e.g.*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754-55 (1998).

addressed the issue of exemption under section 1702(a)(2) in a document titled "Supplemental Information to Part 1710: Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act," *available at* http://www.hud.gov/offices/hsg/sfh/ils/ilsexemp.cfm (last visited Jan. 25, 2008) (hereinafter "Guidelines"). According to HUD, contracts will not be exempt under section 1702(a)(2) if they "allow nonperformance by the seller at the seller's discretion." *Id.* at IV(b). However, "[c]ontract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected." *Id.* Although the parties have not addressed the issue, under the law the Court is required to give "some deference" under *United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001), to HUD's interpretation of the phrase "sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years."[3]

In this case, several contractual terms could be interpreted as creating a conditional duty to perform. First, paragraph three states that the seller will not guarantee a completion date.[4] (Doc. No. 1-3 at 4.) Similarly, paragraph thirty-four allows the seller to cancel the contract if it is unable to sell enough condominium units. (*Id*. at 20.) Naturally, a unilateral right to cancel the contract is inconsistent with an "unconditional obligation" to perform the same contract.

---

[3] According to the Supreme Court, informal policy statements are beyond the pale of full deference under *Chevron U.S.A., Inc. v. Nat. Resources Defense Council, Inc.*, 467 U.S. 837 (1984), but are nevertheless due "some deference" where the agency possesses specialized experience and produced a well-reasoned opinion. *Mead*, 533 U.S. at 235.

[4] At the same time, however, this language could be read to modify the next clause of the paragraph, which states that the unit is estimated to be complete in February of 2007. Defendant was required by the ILSFDA to complete the unit by September of 2007, meaning that a conditional promise to complete the unit by February of 2007 would not necessarily violate section 1702(a)(2).

The parties' arguments primarily center on paragraph fourteen. (Doc. No. 1-3 at 12-13.) The first sentence of the paragraph explains that the unit's completion date is stated in paragraph three, and the second sentence of the paragraph explains that this date may be extended by the seller. The third sentence of the paragraph states that in "no event" shall "such date" be extended beyond two years from the date the agreement is executed. The next sentence is a typical force majeure clause which explains that the "the date for completion may be extended" for several events beyond the seller's control. The final sentence states that the parties intended to qualify for the "exceptions provided by 15 U.S.C. Section 1702(a)(2), and nothing contained in this Agreement shall be construed or operate, as to any obligations of Seller or Buyer, in a manner which would render the exemption inapplicable." (*Id.*)

Florida law requires contracts to be interpreted "in such a way as to give effect to every provision, unless such an interpretation distorts the plain meaning of the agreement." *Hillsborough County Aviation Auth v. Cone Bros.*, 285 So. 2d 619, 621 (Fla. 2d DCA 1973). When certain provisions of a contract cannot be reconciled, it is well established that a "specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject." *Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703 (Fla. 2d DCA 2006).

The final sentence of paragraph fourteen manifests a clear intent to comply with section 1702(a)(2) regardless of the language used in other provisions of the contract. The sentence also explains that the agreement as a whole is to be interpreted in manner consistent with exemption under section 1702(a)(2). On the other hand, conflicting sentences in paragraphs three, fourteen, and thirty-four only speak to the issue in general terms by establishing conditions for performance. These sentences do not address compliance with section 1702(a)(2), nor do they explain how the

provisions are to be interpreted in relation to one another. Therefore, the most logical construction is that the specific language in the last sentence of paragraph fourteen controls with respect to exemption under section 1702(a)(2), trumping any other contractual provision to the extent it conflicts.

Many of the other courts which have dealt with similar "conditional" language have concluded that a contract containing such language does not meet the requirements of section 1702(a)(2). *See Markowitz*, 906 F.2d at 106; *Fourtunato*, 2006 WL 208777 at *3; *Schatz*, 604 F. Supp. at 542; *Samara*, 556 So. 2d at 1099-1100. Similarly, the HUD guidelines disapprove of any contractual provision that allows non-performance at the seller's option. Critically, however, HUD and these courts did not analyze a contract containing a savings clause similar to the last sentence of paragraph fourteen. The presence of the savings clause in this contract demonstrates a clear intent to meet the requirements of section 1702(a)(2), distinguishing this case from others where no such intent was obvious.

Accordingly, Defendant was unconditionally obligated to complete the unit in less than two years and was not required to provide a property report under the ILSFDA. Plaintiffs are not entitled to rescind the contract by virtue of 15 U.S.C. section 1703.

## II.  Plaintiff's Breach of Contract Claim

Defendant contends that despite its "unconditional guarantee" of completing the unit within two years, Plaintiffs are not entitled to summary judgment on their breach of contract claim for three reasons.

### A. Affirmative Defenses

First, Defendant argues that Plaintiffs are not entitled to summary judgment because they have not addressed the three affirmative defenses raised in the Answer.[5] In support, Defendant cites a Florida Supreme Court case which held that an affirmative defense alleged in an answer raises an issue of fact which must be addressed by the plaintiff when moving for summary judgment. (Doc. No. 15 at 5 (citing *Chereton v. Armstrong Rubber Co.*, 87 So. 2d 579, 580 (Fla. 1956).)  This argument is without merit. Federal Rule of Civil Procedure 56 controls the standard for summary judgment in federal court, irrespective of whether the claim before the court is based on federal or state law. *See Hanna v. Plumber*, 380 U.S. 460, 465 (1965). It is axiomatic that a party bearing the burden of proof on a claim must actually present evidence supporting that claim to survive a motion for summary judgment. *Coleman v. Smith*, 828 F.2d 714, 717 (11th Cir. 1987). Defendant bears the burden of proof to establish the affirmative defenses alleged in the Answer and has presented no evidence in support of these defenses. Accordingly, Defendant has not created a genuine issue of material fact simply by alleging three affirmative defenses in its Answer.

### B. Requirement to Deliver a Certificate of Occupancy

Defendant next argues that Plaintiffs cannot maintain a breach of contract action based on the failure to provide a Certificate of Occupancy because paragraph eight of the agreement did not require it to furnish the Certificate at any given time. (Doc. No. 15 at 15.) According to Defendant,

---

[5] Defendant's affirmative defenses are "failure to state claim upon which relief can be granted," estoppel, and waiver. (Doc. No. 7, filed Nov. 9, 2007, at ¶¶ 73-75.) The failure to state a claim upon which relief can be granted is not an affirmative defense, but rather grounds for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court's research indicates that estoppel and waiver are proper affirmative defenses on which Defendant bears the burden of proof. *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So. 2d 1098, 1104 (Fla. 5th DCA 2006).

the paragraph states that providing the Certificate of Occupancy is a "condition precedent" to closing and not an independent ground for breach of contract. (*Id.* at 16.) Paragraph eight provides:

> 8. <u>Closing of Transaction.</u> This transaction shall be closed on the date designated by Seller according to the terms herein, provided: (a) Seller has obtained a temporary (or final) certificate of occupancy for or covering the Unit from the appropriate governmental agency and (b) Seller has recorded in the Public Records of Orange County, Florida, the Declaration including a certificate of a surveyor or engineer certifying that the Unit and Common Elements are substantially complete in accordance of the Florida Condominium Act.

(Doc. No. 1-3 at 7.)

Defendant's reliance on paragraph eight is somewhat misplaced. The requirements under paragraph eight for Defendant to obtain a Certificate of Occupancy as a condition precedent to closing do not foreclose the possibility that Defendant's failure to obtain the Certificate may serve as a ground for breach of contract under a different paragraph.

According to paragraph fourteen, the "completion date" of the unit is required to be within two years of the date the parties executed the contract. (Doc. No. 1-3 at 12-13.) Both Florida law and common sense dictate that a home is not complete until a Certificate of Occupancy is obtained and the buyer is able to occupy the home. *Hollander v. K-Site Assocs.*, 630 So. 2d 1153, 1154 (Fla. 3d DCA 1993). Furthermore, the savings clause of paragraph fourteen demands that the term "completion date" must be interpreted in manner consistent with section 1702(a)(2). HUD has explained that a unit is not "erect[ed]" within the meaning of section 1702(a)(2) until it is "physically habitable and usable for the purpose for which it was purchased."[6] Defendant delivered

---

[6] Similarly, a fundamental principal of contract law is that the intention of the parties govern a contract's interpretation. *Thomas v. Vision I Homeowners Ass'n*, — So. 2d. —, 2007 WL 1427448, at *1 (Fla. 4th DCA 2007). To accept Defendant's construction of the term "completion," one must believe that Plaintiffs intended to contract for a home that was not ready to be occupied.
(continued...)

the Certificate of Occupancy five days late. Thus, Defendant's failure to deliver the Certificate on time constitutes a breach of the contract unless the late performance was excused.

**C.     Excuse**

Defendant next argues that disputed genuine issues of material fact remain as to whether it was excused under the force majeure clause from delivering the Certificate of Occupancy within two years of executing the contract. (Doc. No. 15 at 14-15.) Defendant cites to difficulties dealing with the Orange County government and delays stemming from three hurricanes in 2004. (*Id.*)

The force majeure clause must be read in conjunction with Defendant's exemption from the reporting requirements of the ILSFDA. Seeking this exemption, Defendant drafted the savings clause of paragraph fourteen to bring the contract into compliance with section 1702(a)(2). (*See* Doc. No. 1-3 at 12-13.) Accordingly, that clause must be read to invalidate the force majeure clause to the extent the force majeure clause is inconsistent with the requirements for exemption under section 1702(a)(2). Regarding these requirements, HUD has explained that "[c]ontract provisions which allow for nonperformance or for delays of construction completion beyond the two-year period are acceptable if such provisions are legally recognized as defenses to contract actions in the jurisdiction where the building is being erected." Guidelines, *supra*, at IV(b). Thus, the force majeure clause survives the savings clause to the extent the conditions of non-performance it lists are recognized as defenses to contract actions in Florida. *See id.*

Florida law recognizes the defense of "impossibility" in situations "where purposes for which the contract was made, have, on one side become impossible to perform." *Bland v.*

---

[6](...continued)
There is no evidence in the record suggesting that Plaintiffs intended to contract for anything other than a home that was inhabitable.

*Freightliner, LLC*, 206 F. Supp. 2d 1202, 1208 (M.D. Fla. 2002) (citing *Crown Ice Machine Leasing Co.*, 174 So. 2d 614, 617 (Fla. 1965)). "Acts of God" and governmental action are among several types of business risks which implicate the impossibility defense. *Cook v. Deltona Corp.*, 753 F.2d 1552, 1557 (11th Cir. 1985) (government regulations); *Holly Hill Fruit Prods. Co., Inc. v. Bob Staton, Inc.*, 275 So. 2d 583, 584 (Fla. 2d DCA 1973) (weather). However, "[t]he doctrine of impossibility of performance should be employed with great caution if the relevant business risk was foreseeable at the inception of the agreement and could have been the subject of an express provision of the agreement." *Am. Aviation, Inc. v. Aero-Flight Serv., Inc.*, 712 So. 2d 809, 810 (Fla. 4th DCA 1998). In such cases, an inference arises that the party who naturally bears the risk chose to assume it. *Id.*

Under this standard, Defendant's impossibility defense relating to delays caused by the 2004 hurricanes fails as a matter of law. Hurricanes Charley, Frances, and Jeanne passed through the Orlando area in August and September of 2004, approximately one year before the parties executed this contract. (Doc. 17 at 8; Doc. 1-3.) Defendant cannot seriously contend that the delays resulting from these hurricanes were still "unforeseeable" when the parties executed the contract on September 30, 2005. Furthermore, the contract does not explicitly address the possibility of delays from the 2004 hurricanes. As a result, an inference arises that Defendant chose to assume the risk of delay caused these hurricanes. Defendant has not presented any evidence to overcome this inference.

On the other hand, Defendant has identified a genuine issue of material fact regarding the delays associated with the inspection of the property. (Doc. No. 15 at 14.) The affidavit of Ofer Fridfertig explains that Plaintiffs' condominium unit was the first unit in Orange County to be

inspected under the 2004 Edition of the Florida Building Code. (Doc. No. 17 at 3-4.) According to Fridfertig, the new standards prompted a disagreement between the Orange County Fire Department and Building Department. (*Id.*) In turn, this disagreement led to a twenty-two day delay. (*Id.*) Plaintiffs have not presented any evidence at this point to refute Freidfertig's account of the delay, nor have Plaintiffs presented any evidence that characterizes this delay as foreseeable or insufficient to render performance impossible.

Accordingly, genuine issues of material fact remain as to whether Defendant was excused from delivering the Certificate of Occupancy on or before September 30, 2007.

**Conclusion**

Based on the foregoing, the Court **DENIES** the Motion of Plaintiffs for Summary Judgment and Supporting Memorandum of Legal Authority (Doc. No. 9, filed Nov. 14, 2007).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 29, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record