# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

RICKY HARVEY, CHRISTINE ANN
HARVEY,

                             **Plaintiffs,**

-vs-                                            Case No.  6:07-cv-1641-Orl-DAB

LAKE BUENA VISTA RESORT, LLC,

                             **Defendant.**

_____

## ORDER

       This cause came on for consideration without oral argument on the following motions filed herein:

| MOTION: | **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** (Doc. No. 9) |
|---|---|
| FILED: | **November 14, 2007** |
| | |
| THEREON it is **ORDERED** that the motion is **GRANTED**. | |
| MOTION: | **MOTION FOR JUDGMENT ON THE PLEADINGS AND ALTERNATIVELY MOTION TO STRIKE (Doc. No. 29)** |
| FILED: | **February 18, 2008** |
| | |
| THEREON it is **ORDERED** that the motion is **DENIED**. | |

     Plaintiffs Ricky and Christine Harvey of the United Kingdom are suing Defendant Lake Buena Vista  Resort, LLC, (the "Resort"), located in Orange County, Florida, for violation of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701-1720, breach of contract, fraud, and statutory claims under Florida law, arising from the parties' contract for purchase a condominium unit.  Doc.

No. 1. Plaintiffs have moved for summary judgment and judgment on the pleadings. Doc. No. 9, 29. For the reasons set forth below, Plaintiffs' Motion for Judgment on the Pleadings And Alternatively Motion to Strike (Doc. No. 29) is **DENIED** and Plaintiffs' Motion for Summary Judgment is **GRANTED**.

## I. Procedural History

This case has an unusual procedural history. Plaintiffs filed their Complaint on October 15, 2007. Doc. No. 1. On November 14, 2007, Plaintiffs filed a Motion for Summary Judgment on two counts (Doc. No. 9), to which the Resort responded on November 26, 2007. Doc. No. 15. On December 31, 2007, the parties filed a Case Management Report consenting to jurisdiction of the Magistrate Judge. Doc. No. 21. Judge Fawsett entered an order denying Plaintiff's Motion for Summary Judgment on January 29, 2008. Doc. No. 25. After further reflection on the reassignment to the Magistrate Judge, on February 14, 2008, Judge Fawsett vacated her Order denying summary judgment, and this Court entered a new Case Management and Scheduling Order on February 15, 2008. Doc. Nos. 27, 28. Thus, Judge Fawsett's previous ruling on summary judgment (entered when jurisdiction had already been transferred to the assigned Magistrate Judge for disposition of the entire case) was vacated, and the Motion for Summary Judgment will be decided *de novo* by this Court[1].

On February 18, 2008, Plaintiffs filed a Motion for Judgment on the Pleadings And Alternatively to Strike The Resort's Affirmative Defenses. Doc. No. 29. Plaintiffs were also granted leave to file a Supplemental Affidavit and a Reply to The Resort's Opposition to Plaintiffs' Motion for Summary Judgment. Doc. Nos. 39, 35, 42, 43. The Resort was granted leave to file an amended

---

[1]The Resort makes reference to Judge Fawsett's previous ruling as if it were binding on this Court. Doc. No. 37 at 4 ("On January 29, 2008, this Court found that disputed facts precluded entry of summary judgment for Plaintiff."). The earlier ruling was vacated, and therefore is not binding on the undersigned. Because the parties have received an additional opportunity to supplement their briefing or evidence in support, they have received an extra level of due process.

affidavit in support of its Opposition to the Motion for Summary Judgment.  Doc. Nos. 38, 39, 41. The two Motions became ripe after this further briefing on March 4, 2008.

## II.  Background Facts[2]

Plaintiffs seek to terminate an agreement to purchase a condominium unit (the "Unit"), arguing that rescission is permitted under both the terms of the agreement and the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. §§ 1701-1720.  Doc. No. 9.  On September 30, 2005, Plaintiffs Ricky and Christine Harvey entered into a purchase agreement (the "Purchase Agreement") with Lake Buena Vista Resort, LLC, to purchase a condominium unit.  Doc. No. 10 ¶ 7.  The Purchase Agreement specified that the "completion date" for the unit was on or before September 30, 2007. It is undisputed the Resort did not deliver the certificate of occupancy until October 4, 2007.  Doc. 1-3 at 12-13; Doc. No. 10 at 13.

Congress passed the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.* (ILSFDA), in 1968 "to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development but actually under water or useful only for grazing." *Fortunato v. Windjammer Homebuilders, Inc.*, No. 8:04-cv-165-T-26MSS, 2006 WL 208777, *2 n. 2 (M.D. Fla. Jan. 25, 2006) (quoting *Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1447 (11th Cir. 1985)).  Section 1703(a) of the ILSFDA makes it unlawful to sell "any lot not exempt under section 1702" unless the seller complies with the provisions of the ILSFDA, including disclosure of a property report prior to the purchaser signing a contract. Selling a condominium unit falls within the definition of selling a "lot" within the meaning

---

[2]The Background Facts are either undisputed or read in the light most favorable to the Resort, as they must be on summary judgment.  *See Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) ("Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case.").

of the ILSFDA. *Winter*, 777 F.2d at 1449.  The property report is required to contain information designed to assist potential buyers in making a fully-informed decision whether to purchase.  *Id.*

Certain types of transactions are exempt from the ILSFDA's requirements, including "the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years."  15 U.S.C. § 1702(a)(2)[3]; *see Winter*, 777 F.2d at 1447 n.7 (exemption carves out any sale where the contract unequivocally requires the seller to build such a structure within two years from the signing of the contract for purchase).  It is undisputed that, because the Resort believed it was exempted under this section, it did not issue the property report to Plaintiffs.  Doc. No. 1-3 at 12; Doc. No. 10 at 11.  The parties dispute whether the Purchase Agreement constitutes an agreement "obligating" the Relator to erect a condominium unit on the lot within two years.  If the Resort's obligation is illusory, then a Property Report was required; one was not provided to Plaintiffs, thus Plaintiffs may rescind the transaction.

The Purchase Agreement at issue contains several provisions relevant to the exemption under § 1702(a)(2).  Paragraph 3 of the Purchase Agreement is entitled "Completion Date" and states: "Without guaranteeing a completion date, it is estimated that substantial completion of the Unit shall be approximately February, 2007, subject to provisions of the Standard Provisions including, but not limited to, Paragraphs 8 and 14 thereof."  Doc. No. 1-3 ¶ 3.

Paragraph 14 of the Purchase Agreement provides:

14.     *Completion and Occupancy of the Unit*.
(a)     The estimated completion date of the Unit is set forth in Paragraph 3 herein. Buyer acknowledges that the completion date is only an estimate and is subject to and

---

[3]Title 15 U.S.C. § 1702(a)(2) provides: "Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to- . . . (2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years."

may be extended by Seller.  In no event, however, shall such completion date be later than two (2) years from the date Buyer executes this Agreement.  *The date for completion may be extended by reason of delays incurred by circumstances beyond Seller's control, such as acts of God, war, civil unrest, imposition by a governmental authority of a moratorium upon construction of the Unit or providing of utilities or services which are essential to such construction, casualty losses or material shortages or any other grounds cognizable in Florida contract law as impossibility or frustration of performance, including, without limitation, delays occasioned by wind, rain, lightning and storms.*  It is the intention of the parties that this sale and purchase shall qualify for the exceptions provided by 15 U.S.C. Section 1702(a)(2), and nothing contained in this Agreement shall be construed or operate, as to any obligations of Seller or Buyer, in a manner which would render the exemption inapplicable.

Doc. No. 1-3 ¶ 14 (emphasis added).  Paragraph 34 allows the seller "the right to cancel this Agreement and cause Buyer's deposits to be refunded in the event that Seller does not enter into binding contracts[4] to sell at least 90 of the Units in the Condominium."  Doc. No. 1-3 ¶ 34.

### III. Motion for Judgment on the Pleadings or to Strike The Resort's Affirmative Defenses

Plaintiffs' Motion for Judgment on the Pleadings And Alternatively to Strike is filed too late in the proceedings.  Plaintiffs' Motion for Judgment on the Pleadings is procedurally improper at this stage in the litigation, since Plaintiffs have *already* filed a Motion for Summary Judgment, with evidence outside the pleadings for the Court to consider.  A motion for judgment on the pleadings is limited to the contents of the pleadings once the pleadings are closed, and the motion must be filed "early enough not to delay trial," which in this case is set for November 2008.  Discovery closes on June 2, 2008.

In any event, Plaintiffs' Motion (Doc. No. 29) really only argues the grounds in support of the Motion to Strike the Resort's affirmative defenses.  However, as the Resort points out, Plaintiffs' Motion to Strike is also filed too late in the proceedings.  Under Federal Rule of Civil Procedure 12(f),

---

[4]Paragraph 34 also provides that The Resort's right to cancel the agreement is a "condition subsequent" to the Purchase Agreement. Doc. No. 1-3 ¶ 34.

-5-

the court may strike from any pleading an insufficient defense when the motion is made "within *20 days* after being served with the pleading." FED. R. CIV. P. 12(f).  The Resort's Answer containing its affirmative defenses was served on November 9, 2007.  Doc. No. 7.  Plaintiffs did not file their Motion to Strike until February 18, 2008, well after 20 days had passed.  Doc. No. 19.

Even if the Court were to reach the merits of Plaintiffs' Motion, "[b]oth because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted."  5A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1380 (2d ed. 1990).  "[I]t must be shown that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party. . . .  Thus, even when technically appropriate and well-founded, they often are not granted in the absence of a showing of prejudice to the moving party."  *Id.*

Plaintiffs contend that the Resort's affirmative defenses of estoppel and waiver[5] are "bare bones" conclusory allegations and fail to point to specific facts in support.  "An affirmative defense may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as long as it gives plaintiff fair notice of the nature of the defense."  FEDERAL PRACTICE AND PROCEDURE § 1274 at 455-56.  A defendant is not required under the Federal Rules to support its affirmative defenses with elaborate factual detail.

---

[5]The Resort also sets forth an affirmative defense, in its Answer, of failure to state a claim upon which relief may be granted, *i.e.*, the grounds for a Rule 12(b)(6) motion.  However, any such motion to dismiss on Rule 12(b)(6) grounds must be made *before* an answer is filed.  *See* Fed. R. Civ. P. 12(b) (eff. Dec. 1, 2007).  The Resort did not file a motion to dismiss before filing its Answer (Doc. No. 7); thus, procedurally, the Resort cannot assert an "affirmative defense" for failure to state a claim at this stage, although the Resort would not be precluded from moving for summary judgment on similar grounds.

Plaintiffs' main challenge is to the legal sufficiency of the Resort's affirmative defenses, which are best determined on the merits in the context of the Summary Judgment Motion.  As the authors of the Federal Practice and Procedure Treatise have explained:

> [E]ven when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits. . . . Unless the court is willing to treat a motion under Rule 12(f) as a "speaking" motion, a motion to strike cannot be used to test the underlying merits of the defense because the defense appears to be valid on the basis of the pleading and its insufficiency only can be demonstrated by material that is outside the pleadings. . . . The appropriate remedy appears to be a motion for a partial summary judgment under Rule 56(d), which will enable the court to enter an order indicating that the defense no longer is in controversy.

5A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1380 (2d ed. 1990).   Given the current posture of this case, Plaintiffs' challenge to the Resort's affirmative defenses is more properly considered in the context of Plaintiffs' Motion for Summary Judgment.

## IV.  Motion for Summary Judgment

### A. Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

**B.  Analysis**

Plaintiffs argue that they are entitled to summary judgment on Count I (violation of ILSFDA) or Count III (breach of contract) of their Complaint.  Doc. No. 9.  Plaintiffs contend that the Resort has violated the ILSFDA because the language of the Purchase Agreement is insufficient to trigger the exemption of § 1702(a)(2) unconditionally obligating the Resort to complete the unit in two years.

Plaintiffs point to Paragraphs 3, 14, 34 as examples of the Resort's ability under the Purchase Agreement to avoid completing the unit within two years, or at all, under certain circumstances. Plaintiffs seek rescission under the ILSFDA, which allows purchasers at their option to revoke the contact and receive a full refund when the seller fails to issue a property report.  *See* 15 U.S.C. § 1703(c)-(e).  Plaintiffs alternatively contend that if the § 1702(a)(2) two-year exemption applies, then the Resort breached its contractual obligation to complete the unit in less than two years. According to Plaintiffs, ¶ 13 of the Purchase Agreement allows them to terminate the agreement in the event of a breach and receive a refund of all sums paid.

The Resort argues that its commitment to complete the construction within two years was an unconditional obligation, and therefore exempt under the ILSFDA.  Doc. No. 15.  The Resort argues that ¶ 14's "force majeure" clause does not invalidate its "unconditional obligation" under § 1702(a)(2), particularly because the last sentence of ¶ 14 is a "savings clause" which invalidates all contractual provisions the Court finds are contrary to § 1702(a)(2).  The Resort additionally argues that summary judgment is inappropriate on the breach of contract claim because genuine issues of material fact remain concerning: (1) the Resort's affirmative defenses raised in the Answer; (2) whether performance was excused due to changes in the building code and the 2004 hurricanes; and (3) whether the Resort was contractually required to deliver a certificate of occupancy.

### 1.  Affirmative Defenses

The Resort's affirmative defenses of estoppel and waiver, raised before the Court at the summary judgment stage, must be supported by evidence or present a genuine issue of material fact in the evidence or they will not contradict the Motion.  The mere assertion of an affirmative defense on which the Resort has the burden, without supporting evidence, is insufficient to withstand  a motion for summary judgment.  *See Coleman v. Smith*, 828 F.2d 714, 717 (11th Cir. 1987).  The

Resort mistakenly cites to Florida summary judgment standards, rather than Federal Rule of Civil Procedure 56, which governs in this case. The Resort has the burden of proof to establish the affirmative defenses alleged in the Answer and it has presented no evidence of estoppel or waiver in support of these defenses. The Court will consider the defenses for which the Resort has presented evidence, most significantly on the defenses of impossibility and Act of God, to decide on the merits at this stage of the proceeding. *See Fortunato v. Windjammer Homebuilders, Inc*., No. 8:04-cv-165-T-26MSS, 2006 WL 208777, *2 n. 2 (M.D. Fla. Jan. 25, 2006) (considering exemptions on the merits at summary judgment stage, even though not properly framed as affirmative defenses).

### 2.    Interstate Land Sales Full Disclosure Act §1702(a)(2)

Plaintiffs seek summary judgment on Count I, for the Resort's alleged violation of the Interstate Land Sales Full Disclosure Act ("ILSFDA"). Plaintiffs contend the Purchase Agreement is governed by the ILSFDA, while the Resort asserts the Purchase Agreement fits within an exemption under the ILSFDA, § 1702(a)(2). As Plaintiffs concede, for purposes of determining compliance with the ILSFDA, whether construction is ultimately completed within two years is irrelevant; the Court must determine whether the obligation to complete the Unit in two years is an "unconditional obligation."

Under federal law, exemptions under the ILSFDA must be narrowly and strictly construed. *See Markowitz v. Northeast Land Co.,* 906 F.2d 100, 105 (3d Cir. 1990) (general rule of statutory construction is that exemptions from remedial statutes such as the Act are to be narrowly construed) (citing 3 N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 60.01 (1986)); *see also Samara Development Corp. v. Marlow*, 556 So.2d 1097, 1100-01 (Fla. 1990). Courts look to state contract law to determine whether a contract can be construed as "obligating the seller [to complete construction] within a period of two years." *Markowitz*, 906 F.2d at 105-06 (applying Pennsylvania

-10-

contract law); *Fortunato v. Windjammer Homebuilders, Inc.*, No. 8:04-cv-165-T-26MSS, 2006 WL 208777, at *3 (M.D. Fla. Jan. 25, 2006) (applying Florida law); *Schatz v. Jockey Club Phase III, Ltd.*, 604 F. Supp. 537, 542 (S.D. Fla. 1985) (applying Florida law).  It is undisputed that Florida law applies to the contract at issue.

As Judge Steele outlined in applying Florida contract law to determine an ILSFDA exemption in the very recent decision of *Stein v. Paradigm Mirsol, LLC*:

> The Court concludes that a contract "obligates" the completion of a condominium within two years when that commitment to do so is real and not illusory. Another court has referred to this concept as a time commitment that "unequivocally requires" timely construction, or as a "true obligation" or an "unwavering obligation." *Fortunato v. Windjammer Homebuilders, Inc.*, 8:04-cv-165-T-26MSS, 2006 WL 208777, *3 (M.D.Fla.2006) (J. Lazzara).  To "obligate" the timely completion does not require that the contract be unconditional, so long as the condition(s) does not render the apparent obligation illusory. A two-year completion provision is not required to be an unconditional guarantee which imposes strict liability for noncompliance. *Atteberry v. Maumelle Co.*, 60 F.3d 415, 420 (8th Cir. 1995) ("It is immediately apparent that while these guidelines say that the seller's obligation to build must be specific, they do not say, or even hint, that the obligation must be unconditional. Neither, of course, does the statute.") Such a strict liability for completion is not necessary to prevent the fraud against which the ILSFDA was intended to guard. The Court therefore rejects plaintiffs' argument that any condition on performance renders an agreement illusory.
>
> Thus, the Court agrees only in part with statements in *Samara Dev. Corp. v. Marlow*, 556 So.2d 1097 (Fla. 1990). The Court agrees that the obligation to complete construction within two years must not be illusory. *Id.* at 1099. The Court also agrees with the specific holding of Samara-that a limited remedy of specific performance or return of deposits renders the contract illusory. The Court does not agree, however, with dicta stating "[I]n order for the sale of a condominium in Florida to be exempt from the provisions of the [ILSFDA], the contract must unconditionally obligate the developer to complete construction within two years and must not limit the purchaser's remedies of specific performance or damages." *Id.* at 1098. The idea that performance must be unconditional and that no limitations on remedies are acceptable was apparently influenced by language in the 1979 version of the Guidelines stating that "any conditions which qualify the obligation to complete a building within two years nullify the applicability of the exception." 44 Fed.Reg. 24,010, 24,012 (1979). While *Samara* quoted this language, 556 So.2d at 1099, it failed to note the next paragraph of those Guidelines, which stated: "However, contract provisions which provide for delays of construction completion dates beyond the two-year period are acceptable if such delays are legally supportable in the jurisdiction where the building is being

> erected as an impossibility of performance for reasons beyond the control of the developer. Provisions to allow time extensions for such things as acts of God or material shortages are generally permissible."
>
> * * *
>
> The Court rejects defendant's argument that because a *force majeure* clause is lawful in Florida such a clause does not take a contract outside the scope of the exemption. The issue is not whether such clauses are lawful in Florida; they generally are. *The issue is whether this enforceable clause so undermines the two-year requirement that it renders the provision illusory or not a real obligation.*

*Stein v. Paradigm Mirsol, LLC*, No. 2:07cv71-FTM-29DNF, 2008 WL 344492, *3-4, *5 (M.D. Fla. Feb. 7, 2008) (slip op.) (emphasis added). Judge Steele held that a delay for acts of God "has a well established and limited definition that does not render the Agreement illusory." *Id.* at *5. However, the other provisions at issue in *Stein*, including excused completion in two years for "other delays beyond the control of the Seller," he held were not limited to the narrow doctrine of impossibility of performance which "is employed with great caution" under Florida law. *Id.* at *5 n.4.   *See also Schatz v. Jockey Club Phase III, Ltd.,* 604 F.Supp. 537 (S.D. Fla.1985) (holding "unconditional commitment" under ILSFDA was not established by terms of contract that permitted extension of two-year completion date based on conditions beyond the control of seller and limited purchasers' remedies); *see also* HUD 1984 Guidelines for Exemptions under the ILSFDA Guidelines[6], 49 Fed.Reg. 31375, 31378.

The issue in this case is whether the Relator has a real, unconditional obligation to complete the condominium within two years or whether other provisions render that apparent obligation illusory.  The Purchase Agreement in this case includes a *force majeure* clause with a scope well

---

[6]The U.S. Department of Housing and Urban Development ("HUD") is the federal agency charged with enforcing various provisions of the ILSFDA. *See, e.g.*, 15 U.S.C. § 1707; "Supplemental Information to Part 1710: Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act," *available at* http://www.hud.gov/offices/hsg/sfh/ils/ilsexemp.cfm (hereinafter "Guidelines"). The Guidelines state that it is intended to clarify HUD polices and positions with regard to the statutory exemptions, and that it is an interpretive rule and not a substantive regulation. 61 Fed.Reg. 13596, 13601 (1996). As an interpretive agency rule, the Guidelines are entitled to some deference. *See United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001).

beyond just "acts of God" or the "impossibility" defense, similar to the clauses at issue in *Stein*.  *See* Doc. No. 1-3 ¶ 14.   Paragraph 14 reads:  "The date for completion may be extended by reason of delays incurred by circumstances beyond Seller's control, such as acts of God, war, civil unrest, imposition by a governmental authority of a moratorium upon construction of the Unit or providing of utilities or services which are essential to such construction, casualty losses or material shortages or any other grounds cognizable in Florida contract law as impossibility or frustration of performance, including, without limitation, delays occasioned by wind, rain, lightning and storms."  Doc. No. 1-3 ¶ 14.

The *force majeure* clause in ¶ 14 contains acceptable defenses to the extent it lists "acts of God" and impossibility as defenses to contract actions in Florida. *See Stein*, 2008 WL 344492 at *5. However, the Resort's ability to extend the completion date[7] "by reason of delays incurred by circumstances beyond Seller's control," including the very broad category of "any other grounds cognizable in Florida contract law as . . .  frustration of performance, including without limitation, delays occasioned by wind, rain, lightning, and storms" makes the Resort's two-year completion obligation illusory.  These "far less compelling reasons" are similar to those Judge Steele determined to be "certainly broad enough to allow the Seller to excuse completion on a wide variety of events." *Id*.  A provision in an ILSFDA-governed agreement which extends the completion period for delays not qualifying under Florida's impossibility of performance principles renders the obligation to complete the condominium within two years illusory.  *Id.* at *5 & n. 5 (giving as examples of excused performance under Florida law for "excessive rain" or heart attack of president of developer); *cf.*

---

[7]Although Plaintiffs also argue that ¶ 3 is not an unconditional commitment to complete construction within two years, ¶ 3 is only an "estimate," as it states in the title of the section, and the firm completion date is dictated by ¶ 14. Paragraph 14 states, "In no event, however, shall such completion date be later than two (2) years from the date Buyer executes this Agreement."  The Court's analysis is thus limited to ¶ 14's terms.

*Rondini v. Evernia Properties*, LLP, NO. 07-81077-Civ, 2008 WL 793512 (S.D. Fla. Feb. 13, 2008) (holding seller's obligation not illusory where contract allowed extensions for "delays caused by Acts of God, the unavailability of materials, strikes, other labor problems, governmental orders or other events which would support a defense based upon impossibility of performance for reasons beyond [defendant's] control.").

The remaining issue is whether the last sentence of ¶ 14, styled as a "savings clause" can "save" the Resort's desire that the Purchase Agreement qualify for an exemption under the ILSFDA. The last sentence of ¶ 14 reads: "It is the intention of the parties that this sale and purchase shall qualify for the exceptions provided by 15 U.S.C. § 1702(a)(2), and nothing contained in this Agreement shall be construed or operate, as to any obligations of Seller or Buyer, in a manner which would render the exemption inapplicable." Doc. No. 1-3 ¶ 14. The Court has found no published cases discussing such a "savings clause" in the context of an ILSFDA exemption. However, similar "savings clauses" included in other commercial contracts have been rejected by Florida courts as providing an absolute bar to holding the drafter liable for violating a statute. As the Florida Supreme Court observed in the usury case of *Jersey Palm-Gross, Inc. v. Paper*:

> In rejecting the use of a savings clause as an absolute bar to a usury claim, we note, as have other courts, that a contrary holding would permit a lender to "relieve himself of the pains and penalties visited by law upon such an act by merely writing into the contract a disclaimer of any intention to do that which under his contract he has plainly done." . . . If approved, we believe this practice would undermine public policy as set by the legislature and defeat the purpose of Florida's usury statute. Indeed, such a practice might encourage lenders to charge excessive interest, since, even if caught, the only penalty would be the loss of the excess interest.

658 So.2d 531, 535 (Fla. 1995) (citation omitted). Applying Florida contract law in the context of the Purchase Agreement in this case, where the Resort is seeking to fit under an exemption and avoid the constraints/penalties of the ILSFDA, were the Court to accept the savings clause it would

-14-

"undermine public policy" and defeat Congress's purpose in creating this consumer-protection legislation and requirement that the exemptions be read narrowly. Giving effect to the Resort's purported savings clause in this case would encourage other developers to include the broadest list of potential all-encompassing excuses to extend completion dates beyond two years, and simply tack on a savings clause to avoid losing the exemption in the event it is challenged. Once some or most of the developer's broadly enumerated defenses are found to be unacceptable by a court (necessarily called on to interpret the language of the contract), the developer is still rewarded by retaining the exemption and not having to comply with (or not penalized for failing to comply with) the ILSFDA's requirements.

A developer cannot have it both ways. Either it must list the small number of acceptable defenses to timely completion that are narrowly-tailored contract defenses recognized by Florida law and that fit within the exemption, or if it enumerates a broad, all-encompassing list of defenses it is not entitled to the exemption. A savings clause in general is designed to protect the parties to a contract from changes in the law or the parties' circumstances that occur after the contract has been entered into. *See Jersey Palm-Gross,* 658 So.2d at 535. The savings clause in this case is no more than the Resort developer's attempt to provide itself with an "escape hatch" in order to take advantage of the ILSFDA exemption down the road, despite its failure to draft a Purchase Agreement that actually complied with the ILSFDA in the first instance.

Plaintiffs also argues that the Resort's ability to cancel the Purchase Agreement if it is unable to sell enough condominium units (¶ 34) is a conditional obligation. A unilateral right to cancel the contract based on a lack of sufficient sales after the Purchase Agreement is signed is an illusory promise and is not an "unconditional obligation" to perform the contract as required under the ILSFDA.

Based on either provision – the over-reaching list of defenses or the insufficient sales quota clause – the Resort was not "unconditionally obligated" to complete the Unit within two years. Accordingly, the Resort is not entitled to the § 1702 exemption, and it was required to provide the Plaintiffs with a property report; therefore, Plaintiffs are entitled to rescind the Purchase Agreement, and receive a full refund. *See* 15 U.S.C. § 1703(c)-(e). Plaintiffs are also entitled to their attorney's fees, costs, and other expenses. 15 U.S.C. § 1709. Alternatively, Plaintiffs may seek the appropriate remedy for breach of contract as discussed below.

### 3. Breach of Contract Action

Plaintiffs argue in the alternative that they are entitled to summary judgment on their breach of contract claim for the Resort's failure to complete the unit within two years. Doc. No. 9. Plaintiffs argue that the unit is not complete until it can be used for its intended purpose, which is permissible only upon the issuance of a certificate of occupancy. Plaintiffs did not receive the certificate of occupancy for the Unit until October 4, 2007[8], more than two years after the September 30, 2005 sale date, which violated the terms of the Purchase Agreement. *See* Doc. No. 10 ¶ 15 and p. 13.

The Resort contends that there are disputed issues of material fact as to whether it breached the Purchase Agreement. The Resort maintains that it did not breach the Purchase Agreement by failing to obtain the certificate of occupancy timely; or record the certificate of a surveyor or engineer certifying substantial completion.

Section 8 of the Purchase Agreement provides in pertinent part:

8. *Closing of Transaction.* This transaction shall be closed on the date designated by Seller according to the terms herein, provided: (a) Seller has obtained a temporary (or final) certificate of occupancy for or covering the Unit from the appropriate

---

[8] Plaintiffs also contend that the Resort breached the Purchase Agreement by failing to record in the public records the certificate of a surveyor or engineer certifying the unit was complete. Doc. No. 9 at 18. However, Plaintiffs have not presented evidence that the recording was not accomplished, thus, Plaintiffs are not entitled to summary judgment on this basis.

governmental agency and (b) Seller has recorded in the Public Records of Orange County, Florida, the Declaration including a certificate of a surveyor or engineer certifying that the Unit and Common Elements are substantially complete in accordance with the Florida Condominium Act.

Doc. No. 1-3 at 7.

The Resort argues that Plaintiffs cannot maintain a breach of contract action based on its undisputed failure to provide a Certificate of Occupancy because ¶ 8 of the Purchase Agreement did not require it to furnish the Certificate at a specific time.  Doc. No. 15 at 15.  The Resort argues that the requirement to provide a Certificate of Occupancy is a "condition precedent" to closing, and not as an independent ground for breach of the Purchase Agreement.   The Resort obfuscates the real issue, which is whether the unit was "completed," *i.e.*, Plaintiffs could occupy the dwelling by the date in the Purchase Agreement.

Paragraph 14 of the Purchase Agreement mandates that the "completion" date of the unit is required to be within two years of the date the parties executed the Purchase Agreement.  Doc. No. 1-3 ¶ 14.  As Plaintiffs point out, under Florida law, a home is not "complete" until a certificate of occupancy is obtained and the buyer is able to occupy the home. *Hollander v. K-Site Assocs.*, 630 So. 2d 1153, 1154 (Fla. 3d DCA 1993). Paragraph 14 of the Purchase Agreement demands that the term "completion date" must be interpreted in manner consistent with 15 U.S.C. § 1702(a)(2).  According to HUD Guidelines interpreting the ILSFDA, a unit is not "erect[ed]" within the meaning of § 1702(a)(2) until it is "physically habitable and usable for the purpose for which it was purchased." It is undisputed that the Resort did not deliver the Certificate of Occupancy until October 4, 2007, or five days late.  Doc. No. 10 ¶ 15 (Havey Aff.).  The Resort's failure to deliver the Certificate of Occupancy on time undisputably breached ¶ 14 of the Purchase Agreement.  The only issue is whether this breach was excused.

-17-

The Resort argues that disputed genuine issues of material fact remain as to whether it was excused for failing to deliver the Certificate of Occupancy under the *force majeure* clause in ¶ 14. It contends that certain acts of the local government and acts of God were responsible for the five day delay. The "acts of God" the Resort cites are related to changes in the Florida Building Code made in 2004 and delays stemming from three hurricanes in 2004.

Under Florida contract law, the defense of "impossibility" may be asserted in situations "where purposes for which the contract was made, have, on one side become impossible to perform." *Bland v. Freightliner, LLC*, 206 F. Supp. 2d 1202, 1208 (M.D. Fla. 2002) (citing *Crown Ice Machine Leasing Co.*, 174 So. 2d 614, 617 (Fla. 1965)). "Acts of God" and governmental action are among several types of business risks which implicate the impossibility defense. *Cook v. Deltona Corp.*, 753 F.2d 1552, 1557 (11th Cir. 1985) (government regulations); *Holly Hill Fruit Prods. Co., Inc. v. Bob Staton, Inc.*, 275 So. 2d 583, 584 (Fla. 2d DCA 1973) (weather). However, "[t]he doctrine of impossibility of performance should be employed with great caution if the relevant business risk was foreseeable at the inception of the agreement and could have been the subject of an express provision of the agreement." *Am. Aviation, Inc. v. Aero-Flight Serv., Inc.*, 712 So. 2d 809, 810 (Fla. 4th DCA 1998). In such cases, an inference arises that the party who naturally bears the risk chose to assume it. *Id.*

The Resort contends the delays were related to a delayed permit for a four lane access road to the Resort's condominium project. Doc. No. 17 at 7-8 (Aff. of Larry Cohen). The permit application for the road was made with the Building Department on December 1, 2004 and the permit was issued on July 14, 2005. *Id.* ¶ 4-5. The Resort's impossibility defense based on the 2004 hurricanes fails as a matter of law because the hurricanes passed through Orlando an *entire year* before the parties executed the Purchase Agreement. The Resort was clearly aware of the risk of the

road construction delay at the time it signed the Purchase Agreement because the road was completed *three months* before it was signed.

The Resort's argument about unanticipated delays from change in the Building Code for new construction permit applications is equally unavailing.  The affidavit of Ofer Fridfertig explains that Plaintiffs' condominium unit was the first unit in Orange County to be inspected under what he characterizes as the "recently adopted" 2004 Edition of the Florida Building Code and ambiguities in the Building Code and conflicts with other applicable codes, which resulted in delays in completion of the building.  Doc. No. 41 at 3-4.  Plaintiffs have supplied their own expert affidavit from Daniel R. Robison, an experienced general contractor who states that the Florida Building Code, which is updated every three years, was approved by the Florida Building Commission in April 2004 and was available on-line by July 1, 2004; it became effective on October 1, 2005.  Doc. No. 43 (Aff. of Robinson).  Conflicts between the Florida Building Code, the Florida Fire Prevention Code, and other types of building codes are common and foreseeable events in the construction industry.  *Id.*

The Eleventh Circuit's opinion in *Cook v. Deltona Corporation*, 753 F.2d 1552 (11th Cir. 1985) applying Florida law is directly on point.  In *Cook*, a purchaser of an island lot sued the land developer when the developer for failing to deliver the purchaser's lot on time when the Army Corps of Engineers increased the regulatory requirements for the issuance of dredge and fill permits on the land.  The Eleventh Circuit held the developer had no valid "impossibility" defense to the breach of contract action based on the change in permit requirements:

> [The developer] Deltona conceded nonperformance but raised the affirmative defense of impossibility, arguing that performance was rendered impossible by the substantial and unforeseeable increase in regulatory requirements for the issuance of the required Army Corps of Engineers dredge and fill permits. In light of this concession and asserted affirmative defense, the propriety of the district court's directed verdict on the breach of contract claim rests upon an issue of law: whether Deltona's performance

-19-

was rendered impossible by regulatory developments supervening between the formation of the contract in 1971 and the date of its scheduled performance in 1980.

There is a fascinating contradiction inherent in the judicially created impossibility defense which reveals a basic tension in the law. Contracts are born of the need for certainty. They are the merchant's exchange of serendipity for serenity, the deal upon which he can rely, for better or worse, months or years hence. A contract is insurance against change. The early common law enforced the policy by making contractual liability absolute, *see e.g.,* 18 Williston, *The Law of Contracts* § 1939 (3d ed. 1978), on the theory that a contractual duty, unlike a duty imposed by, for example, tort law, is tailored by the party for himself and any eventuality might be provided for in the contract. *Paradine v. Jane,* 82 Eng.Rep. 897 (K.B. 1647).

But change is what impossibility is about. As Professor Gilmore put it, it arises as a defense when "the real world has in some way failed to correspond with the imaginary world hypothesized by the parties to the contract." G. Gilmore, *The Death of Contract* 81 (1974). By recognizing impossibility as a sort of 'escape hatch' from the self-made chamber of contractual duty, the courts have recognized that absolute contractual liability is economically and socially unworkable. Impossibility accommodates the tension between the changes a party bargains to avoid and the changes, unbargained for and radical, that make enforcement of the bargain unwise.

Thus, it seems to us that the most profitable approach to an impossibility claim is not to pass on the relative difficulty caused by a supervening event, but to ask whether that supervening event so radically altered the world in which the parties were expected to fulfill their promises that it is unwise to hold them to the bargain. Ultimately the issue is whether the change was foreseeable. This is the rule in Florida. *See Shore Investment Co. v. Hotel Trinidad, Inc.,* 158 Fla. 682, 29 So.2d 696 (1947); 11 Fla.Jur.2d *Contracts* § 213 (1979).

In the case before us it is certainly clear that the regulation of dredge and fill activities on Marco Island, including the plaintiff's Marco Shores tract, increased substantially between 1971, the date of contracting, and 1980, the date performance was due. *However, it is also clear that this increase in regulation was not beyond the contemplation* of [the developer] Deltona in 1971. As early as 1969 Deltona was informed by the Army Corps of Engineers that the Roberts Bay dredge and fill permit was granted but that subsequent permits would be reviewed independently and a subsequent determination made as to each. Although the Corps advised Deltona it could continue to sell land within an area encompassing the Marco Shores tract, the company was to be on notice that dredge and fill permits were not assured for any additional areas. This advice preceded Deltona's purchase of the Marco Shores tract. *While it may be true that the extent of the ensuing regulations could not have been foreseen by the company in 1971, it is equally true that the winds of change were blowing and that Deltona was aware of that fact. This awareness disables Deltona's assertion that the increase in regulation changed basic assumptions upon which the*

-20-

*contract was founded.* Accordingly, we find no impossibility in this case. The district court's directed verdict for the plaintiff on the issue of breach of contract was therefore correct.

753 F.2d 1552, 1557-58 (emphasis added).  Similarly, in this case, "the winds of change were blowing" and the Resort knew or should have known of the 2004 changes to the Florida Building Code in April 2004, or by the latest, at its publication in July 2004.  Either date was at least *fourteen months* before the Resort entered into the Purchase Agreement with Plaintiffs on September 30, 2005.  As a matter of law, the 2004 change to the Building Code cannot be the grounds for the Resort's impossibility defense for a Purchase Agreement signed in September 2005.  Plaintiffs available remedies include rescission for the breach of contract.  Under the terms of the Purchase Agreement, as prevailing party, Plaintiffs are also entitled to the costs of suit, including reasonable attorneys' fees.  Doc. No. 1-3 ¶ 27.

## CONCLUSION

Plaintiffs are entitled to summary judgment on Count I (violation of ILSFDA) or in the alternative on Count III (breach of contract), and the respective remedies.  Within 11 days of the date of this Order, Plaintiffs are **ORDERED** to file a response indicating which remedy they elect and the basis for seeking any pre-judgment interest, and attorney's fees.

**DONE** and **ORDERED** in Orlando, Florida on April 22, 2008.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-21-